Our final case for argument this morning is 2011-7052, SHERFIELD v. DVA. Mr. Carpenter, whenever you're ready. Good morning. Good morning, Your Honors. May it please the Court, Kent Carpenter appearing on behalf of Mr. Andrew SHERFIELD. This case involves the interpretation of the VA's rating schedule for mental health disorders at 38 CFR 4.130. The Secretary has specifically recognized in promulgating this regulation the close relationship between global assessment of functioning scores under its provisions of the DSM, the Diagnostic and Statistical Manual of Mental Disorders by the American Psychiatric Association, for the VA's general rating formula for mental disorders. In this case, the gas scores varied widely. They varied from lows of 40 to highs of 70. The facts in this case in that regard are not in dispute. Mr. SHERFIELD does not ask this Court to review the facts of this case and does not ask this Court to make a factual determination. Mr. SHERFIELD asked this Court to review and interpret the provisions of 38 CFR 4.130 specifically as they relate to the provisions of 4.3 and 4.7. What is your view on how that provision should be interpreted? What do you say 4.130 requires? 4.130 requires consideration of all probative evidence. In this case, the Board did not consider all of the gas scores by making a selective determination that certain gas scores were more probative than other gas scores. I guess I don't understand what you just said. You say it didn't consider them, but then you say that it found some were more probative than others. Those two statements seem mutually exclusive to me. I may have overstated the circumstance here. In this case, what happened was that the Board took VA medical records, and all of the medical records that assign gas scores in this case are from the VA. It differentiated between gas scores that were assigned by VA examiners against gas scores that were provided by treating mental health professionals. But they considered both. And they did consider both. But in that consideration, they gave more probative value to the gas scores that were assigned by the VA examiners. I believe that that is inconsistent with the plain language of the VA's own regulation, in that the VA's regulations expressly require that all evidence is probative as it relates to the evaluation of a psychiatric disability. What are you talking about? What regulation? We are in the regulation? What specifically in the regulation are you referring to? I believe it's 4. I thought your focus was simply on 4.3 and 4.7. You didn't argue that there was any other provision that had been misapplied. No, not that it was misapplied, but the regulation that I was making reference to, and it's 4.2, requires the consideration of all evidence. Each disability must be considered from the point of view of the veteran working or seeking work. That is the purpose of the assignment of a gas score under the Diagnostic and Statistical Manual. Once they consider all the evidence, it's up to the Board to ultimately weigh that evidence. We can't re-weigh. I'm not asking you to re-weigh, and I wasn't asking the court below to re-weigh. I was saying to the court below that there are two specific regulations, 4.3 and 4.7, that apply when you are evaluating the next higher rating and the difference between two ratings. We are at, in the mental health context, a 70% rating and a 100% rating. He's rated at 70. The only other available rating is 100%. And what they did, in my view, was to not follow their own regulations under 4.3 and 4.7 when considering the next higher rating, when clearly this conflicting evidence of gas scores raised reasonable doubt. Didn't the lower court specifically say that you only get the 4.3 and 4.7 when the evidence is in equipoise? Yes, they did, Your Honor. And are you disagreeing with that? Are you just disagreeing with whether it was in equipoise? I am disagreeing with the fact that equipoise is the test under 4.3 and 4.7. Equipoise is the test under 5107. That is the test for reasonable doubt under the general proposition as provided by Congress. The specifics of evaluation are provided in Part 4 of Title 38, specifically in 4.3. And 4.3 does not talk about an approximate balance of positive and negative evidence. There is no evidentiary threshold requirement. It says when a reasonable doubt arises. When you say when a reasonable doubt arises, you're referring to 4.3. 4.3, that's correct. And you're saying that that applies in every case where there's conflicting evidence? Yes, Your Honor. In the context of evaluating, determining under 4.130 the rating to be assigned. Wouldn't that mean that any time there's any conflict in the evidence, then automatically the higher rating gets applied? Regardless of whether the board weighs the evidence and considers the evidence and finds one aspect of the evidence more probative than the other? No, because the VA by regulation says you have to define the disability picture. And the disability picture is the totality of the limitations that are imposed by this psychiatric disorder. And by selectively saying we're only going to look at VA examiners' GAF scores as being probative, they're devaluating and implicitly rejecting GAF scores that show... What they said is we find these to be more persuasive. That's different. They looked at everything. But, Your Honor, looking at everything is not what is required by 4.3 and 4.7. What is required by 4.3, then? When you say looking at everything and what is required more than looking at everything and evaluating everything? Let me back up first. It goes to the error of the court below that the court below said that the board wasn't required to look at the VA's own regulations. So, before we even start with what is required by those regulations, it was error to say that the board was not required to consider and apply all applicable provisions of law and regulation. These are applicable provisions of law and regulation when you're assigning a rating. So, your view is in every case 4.3 applies? In every case where a rating is being assigned. That is correct, Your Honor. And it is especially important in a psychiatric case as we describe the regulatory scheme because it says you have to look at the totality because of the conflicting nature implicit in psychiatric evaluations. Yes, Judge, I'm sorry. But when you look at 4.3 and 4.7, it refers to a reasonable doubt rising as to the degree of the disability. Correct. And that's really a complaint. That's right. That the board did not apply 4.3 and had they applied 4.3, then the disability had to go from 70 to 100%. Yes, Your Honor. Because the question is, and really the problem I'm having is, we have construed what reasonable doubt means. And we've looked at this in terms of whether the evidence can go either way, one way or the other, when the evidence is in equipose. And I don't see that you have presented arguments that the evidence here was in equipose. It seems like you're saying if we present any controverted evidence, then you have to decide in favor of the balanced skills in favor of the veteran. No, Your Honor, it's very important to understand that first what I'm saying is that the board must consider these when there is, as there is here, clearly conflicting evidence amongst their own mental health professionals. Why do you say they did not consider it? Because they made the determination that they were going to rely upon the two VA examinations as being more probative of the degree of disability. That's not saying they didn't consider all the evidence. That's just saying that they found certain evidence more probative. When the court examined this below, it said, no, they gave an explanation that explained why they did that. But that explanation for why they relied upon that evidence is not good enough under 4.3, because 4.3 says that when the reasonable doubt arises, and I'm suggesting that when the VA's own mental health professionals differ about the severity of the condition, and in this case we're dealing with a conflict between treating physicians and examining physicians, and the board gave the benefit of the doubt to the examining physician. So your view is, and I think Judge O'Malley started with this question, your view is that any time there is conflicting evidence, the veteran wins under 4.3. No. Any time there is conflicting evidence, the board must go to 4.3. And they didn't go to 4.3 here. And what happens when they go to 4.3? Then they have to look at 4.7 as well, and they have to examine the total disability picture. And in examining the total disability picture, they have to determine whether or not a reasonable doubt has arisen when you have multiple gas scores that are below 40 and only two from VA examiners that are above 70, and therefore reasonable doubt has arisen. And this is not the approximate balance or equipoise analysis that's required by 5107. This is a regulatory-specific regulation that addresses reasonable doubt in the context of making the assignment of a psychiatric evaluation, in this case the difference between a 70% rating and a 100% rating, and the VA's own regulation says, and when there is such a difference, you resolve it in favor of the veteran and you go for the next higher rating. So just to sum up, I just want to see if I understand really. 4.13 in your view requires that if there's any evidence on the other side, any evidence, then the board is required to move on to 4.3 and 4.7 and apply not an equipoise rule, but a rule that says if there's any evidence on one side, even if there's an enormous amount of evidence on the other side, the veteran wins? I don't go that far, Your Honor. I say first that they must consider and apply 4.3 and 4.7, which the board didn't do, and the court below didn't require the board to do. And once there, their own regulations describe defining the disability picture. Their own regulations also define reasonable doubt, and they define it in terms of equipoise. Forget about our case, all the regulations define it in terms of equipoise. They do at 3.102, but they don't in 4.3, and these are the regulations that apply to the evaluation of a disability. This court has defined or interpreted reasonable doubt to mean an equipoise. Based upon the language of 5107, Your Honor. And clearly, based upon the language that's in the statute. Aren't you asking us to re-weigh the evidence, to reconsider the disability ratings? Absolutely not. What I'm asking you to do is to determine whether or not the VA has to follow its own regulations. Essentially what the VA is saying, we've got to get out of jail free card because 5107 says it's always got to be an equipoise. But 4.3 actually incorporates the definition from the regulations at 3.102. It cites to it specifically. It refers back to it. It does, Your Honor. So when defining reasonable doubt in 4.3, we have to look to 3.102. And if they had made that equipoise analysis in consideration of 4.3, then possibly there would have been no error here. But the error here was that they never went to 4.3. So they weighed the evidence in 4.13. There's no dispute that they looked at all the evidence. And then what you're saying, the legal error here, was they had to include a sentence that we find the evidence is not an equipoise and therefore 4.3 does not apply. Would that have been sufficient? Is that what you're saying, the legal error here? Well, I wouldn't put it quite that succinctly. If they gave an adequate statement of reasons or basis why it didn't apply, then that would be sufficient. I don't think a mere declaration is sufficient. The analysis that they did, clearly you come away from that realizing they didn't conclude that the evidence was an equipoise. They clearly weighed the evidence. And it's a matter that we can't second-guess here. I understand that. But with all due respect, we're focusing way too much on equipoise and ignoring the VA's regulatory scheme. The VA has set out by regulation how you're supposed to evaluate, and they didn't comply with those regulations and they didn't consider them, particularly in relationship to consideration of the next higher rating under 4.7 as well as the reasonable doubt under 4.3. And they can't simply pick and choose and say, well, we did generally consider them. No, they have to consider and apply all applicable provisions or they haven't done it correctly. And if they haven't done it correctly, then Mr. Shorfield did not get the benefit that he was entitled to. We appreciate your argument. You had a lot of questions. You've run over, but we'll restore two minutes of rebuttal. Thank you very much. Mr. Goodman. Good morning, Your Honor. May it please the Court. This Court often deals with cases where the Board committed some error and the Veterans Court says, well, that error was harmless, and the Veterans Court looks at what the Board did. And for whatever reason, it's beyond this Court's jurisdiction to consider. This is a great case to look at because it shows where the Board made no errors of any kind. So you're not suggesting there's harmless error here? No, Your Honor. Not at all. If Your Honors turn to page 160 of the Joint Appendix, this is the Board's decision. We can see exactly what the Board did here. The Board said the majority of the Veterans' GAF scores support a 50% initial evaluation, but the December 1998 and April 2003 GAF scores suggest that a 70% evaluation may be warranted. So the Board's considering, is Mr. Shurfield in the 50% category or in the 70% category? The Board says these two scores, however, suggest that a 70% evaluation may be warranted. because such scores contemplate some impairment in reality testing or communication or major impairment in several areas. That's all on page 160 of the bottom paragraph. The Board then goes on on page 161. After describing all of the objective evidence of Mr. Shurfield's disability, the Board says, and it's about the middle of the paragraph, Thus, the evidence shows occasional social and occupational impairment with deficiencies in most areas, including work, family relations, judgment, and mood, and the sentence goes on. The Board was weighing whether Mr. Shurfield was in the 50% category or in the 70% category, and the Board concluded that the disability picture more closely approximated the 70% category and therefore assigned the 70% category. That's application of 4.3 and 4.7. In the Board's earlier opinion, which was vacated, the Board specifically here in this long paragraph Do you agree with Mr. Maybe, I'm not sure he will agree with me, but what I perceive to be part of Mr. Carpenter's argument that in every case the Board has to evaluate not just under 1.3 but also under 4.3 and 4.7? No, Your Honor. If there's some doubt, some reasonable doubt between two ratings, then the Board needs to consider how 4.3 will apply. If there's some question as to which of two ratings is appropriate, then the Board has to consider 4.7. In this case, the Board found no reasonable doubt at all. I was pointing, Your Honors, to the analysis that the Board conducted between 50% and 70%. Mr. Shurfield's argument is that there's some reasonable doubt between 70 and 100, but there's nothing in the Board opinion to suggest there's any doubt between those two ratings. If there is any doubt, it's in the earlier two ratings. And I was pointing, Your Honors, back to page 126 of the joint appendix where the Board specifically said it was applying 4.7 in order to give the 70% rating in that earlier decision. Looking at page 162 where they then compare 100% versus 70%, they just simply say, well, this is evidence, this is evidence. It is somewhat conclusory. They don't actually say whether or not they think that there is a reasonable doubt between the two, do they? They don't explicitly say there's not a reasonable doubt here. It's pretty clear from this three-page analysis that the Board was saying that any doubt, if there was any doubt, was between 50 and 70, not between 70 and 100. In this long paragraph on page 162, the Board says 100% evaluation is not for application. The Board says in the middle of the paragraph, the evidence indicates that the veteran was not totally socially impaired. Although this symptomatology indicates severe social and occupational impairment, it does not demonstrate total impairment. So the Board is specifically rejecting the notion that 100% is appropriate here. The entirety of Mr. Shearfield's argument for why 100% might be appropriate is these two GAF scores of 40. The Board specifically refers, again, back on page 160, to those two scores as reasons that 70% might be appropriate. Mr. Shearfield suggests that those 40s automatically bring into play that 100% might be appropriate. The Board simply disagrees with that weighing of the evidence, and that's something, of course, this Court cannot address. A couple of specific things I heard I'd like to respond to. I want to move back a little because, as you know, what we labor with in these cases, as Mr. Carpenter well knows, is a threshold issue of whether or not we have jurisdiction or not. I understood the government re-arguing that we don't have jurisdiction, but it seems to me, in your argument today, that maybe there is a legal question. You just say that everybody agrees with the result here, that 4.3 or 4.7 are things that need to be considered. I wanted to point out to the Court the excellent analysis that the Board did in this case, and why even if 4.3 and 4.7 were to be applied here, then the way that they were applied was appropriate. Well, do we agree that 4.3 and 4.7 need to be applied in every analysis? And if so, is that a legal question over which we have jurisdiction? If 4.3 and 4.7 are applicable by their very nature as regulations, like the First Amendment and Due Process Clause, they're applicable. They apply whenever a rating is done. That's not to say they need to be discussed in every case. Should they be addressed? No, Your Honor. I mean, just in passing, saying we consider reasonable doubt under 4.3 and 4.7, and they move on. As the Veterans Court found, there's no specific requirement that the Board address and discuss those two regulations and say... How are we to know that they considered them, then? Well, we assume that the Board did a good job and tried to... Well, I thought your point was that they only come into play in terms of having an impact on the case once you assume that the evidence is inequitable. Yes, Your Honor. The only time there would be is that, of course, they're always out there, but they're actually not applicable unless the Board comes to point 10, which is, yes, the evidence is inequitable. Now what do we do? And then they come into play, correct? Absolutely, Your Honor. Once the Board's reached that conclusion that there is a reasonable doubt, then the Board needs to discuss 4.3. But until that point, the Board need not discuss 4.3. Of course, in the back of the Board members' minds is that 4.3 and 4.7 exist. Should I find any reasonable doubt? Should I find that one of two ratings is appropriate? But the Board need not discuss them, as the Veterans Court found. But they really don't apply. They exist in all cases, but they don't come alive. They don't become applicable. I guess this is a question of whether it's your view. But if the Board doesn't have to mention it or say that they apply, then in every case that comes before us, there's a potential that we could never review a matter under 4.3 or 4.7. That's correct, Your Honor, and that's the conclusion from this Court's Ortiz decision. These are regulations designed to tell a rating examiner, when he's deciding which of two ratings to give, to give the benefit of the doubt to the Veteran, how to do that. That's not something for this Court to review. It is reviewable at the Veterans Court after the Board makes the initial determination. Then the Board reviews that, and then it goes to the Veterans Court, and the Veterans Court can review whether that was appropriately done. All of that is very factual-based. But we have jurisdiction in a case where it was clear from the record that the results of their evaluation of the evidence left both sides sort of equal. And if they go on to reject the claim, then we would have jurisdiction, would we not, to say, no, no, no, no, based on their findings of fact, this case comes under 4.3 or 4.7. Yes, Your Honor, based on the finding of fact that there was a reasonable doubt raised here. Here there's no such finding of fact. Mr. Shurfield argues that because there are a number of GAF scores, there necessarily was a finding of fact that there's a reasonable doubt. That's simply not the case. I presume he's arguing as a matter of law that if there are a number of different GAF scores, that that must raise a reasonable doubt. Of course, the problem with that argument is whenever there's more than one examination, that argument would suggest that there's always a reasonable doubt between which of the two examinations is correct. So as this Court explained in Ortiz, the threshold question is whether there's a reasonable doubt. Once there's a reasonable doubt raised, then yes, the Board needs to discuss 4.3 and how it applies. Until then, the Board doesn't have to discuss 4.3. I noticed that Mr. Shurfield's brief doesn't actually raise 4.3 and 4.7 as independent arguments as he did before the Veterans Court. He differentiated out these three arguments. Here, for whatever reason, Mr. Shurfield's only saying that 4.130 somehow raises 4.3 and 4.7's applicability into question. I'm not really sure I understand completely why Mr. Shurfield's making that argument, but our brief thoroughly explains why 4.130 on its face doesn't mention or refer to 4.3 and 4.7. When those two regulations apply, they apply because of their very nature, not because 4.130 brings them in somehow. A couple other quick points I wanted to make. I heard today Mr. Shurfield's counsel suggest that the Veterans Court said that the Board didn't have to consider 4.3 and 4.7. In fact, what the Veterans Court said is that the Board need not discuss those applications. Well, I think the quote he has that I was just looking at in gray, maybe I can't find it. Mr. Carpenter does quote what the Veterans Court said. The VA incorrectly argues, he's arguing your argument, the VA had intended the application of 4.13 to require consideration and discussion. So that's your view. I'm sorry, I didn't understand the question. Your view is that the VA is not required to consider or discuss 4.3 and 4.7 in all proceedings. It's certainly not required to discuss 4.3 and 4.7 in all proceedings. It's required to consider them as, again, as generally applicable, and if it finds reasonable doubt, then it has to consider how 4.3 is applied, and when in doubt between two ratings. He does say that, strongly suggested, 26, that the 4.13 doesn't require consideration and discussion. So you're saying it does require consideration, but to the extent that it's always in the background. Yes, Your Honor, that's exactly what I'm trying to say. This might be too finely parsing, but 4.3 and 4.7 are always required to be considered by the examiner. When the examiner is doing a rating, in the back of his mind is, if there's any doubt at any level here, then I'm going to give that doubt to the veteran. So 4.3 is kind of always being considered. But not considered to the extent that it comes into play. You're just saying that it doesn't come into play. It can be considered, but not come into play unless certain evidentiary. How do we know it was considered? You're asking us to assume that they considered it, and here we have a case where Mr. Sheffield is saying they didn't consider it. We know because there's nothing in the board's opinion that says there was any reasonable doubt raised here. If there were any doubt expressed in the board's decision that... You're asking us to assume that they did consider, and therefore they were silent in the opinion. Not exactly, Your Honor. What I'm suggesting is that there was no reasonable doubt raised here. So that level of consideration that Mr. Sheffield is saying wasn't accomplished here, it need not have been accomplished because there was no reasonable doubt raised in the first instance. There was no threshold doubt such that the doubt needs to be applied on behalf of the veteran. And we know that because nothing about the board's opinion suggests that there was any doubt, and the Veterans Court said that the Veterans Court clearly concluded that 100% was not applicable and that 70% was. The Veterans Court, interpreting the board's decision, said there was no reasonable doubt here, and without there being reasonable doubt, the board need not have discussed 4.3. A couple of other things I heard this morning, Mr. Sheffield's counsel argued that 4.130 requires consideration of all probative evidence. We don't disagree at all. 4.130, of course, requires consideration of all probative evidence, and the board here specifically considered each of the GAF scores and said that they were probative. So that's not really in question. I think there were no other points based on what the opposing counsel said this morning that I wanted to raise, unless your honors have any additional questions. We respectfully request that the court confirm the decision of the Veterans Court. Thank you. May it please the court. If I understand the government's argument, VA regulations, particularly in the 4.1 up to 4.130, are simply elevator music. They're background noise. You really don't have to, as an institution, follow them. You don't have to discuss them. You don't have to consider them. That simply cannot be the law. 4.2... Even if we accept the proposition that you have to follow them and you have to consider them, even if we accept that it's true in every case, does it have to be expressly addressed in every opinion? There's lots of regulations out there, and we don't require every opinion to address regulations that don't have anything to do with the case or that aren't really presented by us. What I've tried to do in my brief is to show the court the regulatory scheme, beginning with 4.2 and running through 4.7. In each of those specific regulations, it talks about a consistent picture and it talks about a disability picture that deals specifically with work. If you look at what the board did, the board did not focus on his inability to work. We point out in our brief several specific references to his inability to work that are expressed both by GAF scores and by vocational experts that indicate that this veteran will not be able to hold a job, will not be able to attend or concentrate or relate with people, even for the simplest task in a working setting. Now, that's the fundamental criteria under 4.130 for the assignment of a 100% rating, a total occupational impairment. When they examined the evidence, because they didn't consider the statutory scheme, because they didn't look at what their own regulations require, they didn't focus, as they should have, on the degree of impairment of his working. Well, that's a different argument than saying 4.3 and 4.7 could have made a difference. What you're saying is that they misapplied some different regulation or they misinterpreted the evidence? No, Your Honor. This is about the interpretation of the regulatory scheme. The government just conceded that under 4.130 they must consider all probative evidence. The question is not did they or didn't they consider it, but did they consider it as their regulatory scheme requires. And that regulatory scheme requires, particularly in 4.7, a consideration of what the disability picture is. So is the board required, in their opinion, if they considered all the evidence, are they required to say, we've looked at all the evidence and we've also taken a look at the applicability of 4.3 and 4.7 and we find those don't apply, it's not a necropos here. Are they required to make those type of statements? I believe they are, Your Honor, and more importantly, under 4.7, they are required to say, we conclude that this is the total disability picture. Make a specific finding that even though impaired, he is not totally impaired. He is able to work based upon the evidence in the record. And this record does not support that conclusion. In page 162 of the joint appendix of the board opinion, they specifically said this is not total impairment. They made a very specific finding. In relationship to work, Your Honor, and that's what they omitted. They omitted the relevance, they used the magic word, they did use total impairment. But what is required is a description of the disability picture in the context of his ability to work or not to work. That's what their regulations flesh out that defines what that total impairment is, the inability to work. We thank both counsels for their arguments. Thank you very much, Your Honor. That concludes proceedings this morning. All rise. The Honorable Court is adjourned until tomorrow morning at 10 a.m.